1829.

Edmeston
v.
Lyde.

[*637]

\*EDMESTON AND RIDDLE, EXECUTORS, &c. *v.* LYDE AND WALTON.

A creditor whose execution at law has been returned unsatisfied, may file a bill to reach the equitable estate of the defendants, either in his own name and for his own benefit; or he may join with other creditors standing in the same situation with himself; or he may file a bill in behalf of himself and all others, being judgment creditors, whose executions have been returned unsatisfied and who may choose to come in under the decree and contribute to the expenses of the suit.

A judgment creditor does not obtain a specific lien upon the equitable estate of the debtor by the return of an execution unsatisfied, but by the commencement of a suit in equity after the execution has been so returned.

An assignment by the defendant of his property after the filing the bill in this court, will not divest the lien of the judgment creditor.

Where property has been fraudulently assigned by the debtor, so that he has no legal or equitable rights as against the assignee, it will be necessary to make the assignee a party to enable the court to reach the property in his hands.

But where the debtor still retains the legal or equitable interest in the property, such interest may be conveyed to the complainant or transferred to a receiver under the decree of the court, without making the trustee of the defendant a party.

The debts, choses in action and other equitable rights of the defendant may be assigned or sold under the decree of this court, and the purchaser will be protected both in equity and at law.

Every species of property belonging to a debtor may be reached and applied to the satisfaction of his debts.

1829.

Edmeston
v.
Lyde.

THE complainants recovered judgment against the defendants in the Supreme Court for $3,945 59, and issued a *fieri facias* thereon to the sheriff of the city and county of New York, where the defendants were arrested and where they still resided. The sheriff having returned the execution unsatisfied, the complainants filed their bill in this cause for a discovery, and to obtain satisfaction of their judgment out of the equitable estate and choses in action of the defendants, which could not be reached by the execution at law. By the answer, the facts stated in the bill were admitted. The defendants also admitted that .they were insolvent and unable to pay their debts ; that certain real estate of theirs was sold under an execution in their favor and bid in by W. G. *Buckner for their benefit, subject to the lien of such sums as he should advance to them from time to time, for which they held his written receipt, or acknowledgment of the trust ; and that he had advanced to them $1,400 on account thereof. The defendants also set out in their answer an account of several choses in action of small or doubtful value, which belonged to them at the time the complainants' bill was filed. They also alleged that there were other judgment creditors whose judgments were prior to that of the complainants, and that such creditors ought to be made parties to the suit. The cause was heard on bill and answer ; and the questions raised on the hearing were, whether the other judgment creditors and Buckner ought to have been made parties; and as to the nature of the relief to which the complainants were entitled.

Nov. 16th.

[*638]

*R. Sedgwick* for the complainants.

*G. Griffin* for the defendants.

VOL. I.          45

1829.

Edmeston
v.
Lyde.

THE CHANCELLOR:—The first question in this case is as to the rights of the other judgment creditors of the defendants, and whether they are necessary parties. It might be sufficient in this case to say they do not stand in the same right with the complainants, as it does not appear by the answer that executions in those causes have been actually returned unsatisfied; which was necessary to give them any right to come into this court for relief; (*Beck* v. *Burdett*, 1 Paige's R. 305.) But it may be useful to inquire whether they would be necessary parties, even if that fact was distinctly alleged in the answer. I have once had occasion to examine this question elsewhere, and the conclusion to which I arrived was, that the creditor whose execution at law was returned unsatisfied might file a bill to reach the equitable estate of the defendants, either in his own name and for his own benefit, or might join with others standing in the same situation in a joint suit for their joint benefit, in proportion to the amount due to each, as in the case of *McDermott and others* v. *Strong*, (4 John. Ch. R. 687,) or that he might file a bill, in the usual way, in behalf of himself and all others standing in the same situation, as judgment creditors whose executions *had been returned unsatisfied, and who might choose to come in under the decree and contribute to the expenses of the suit. I can see no reasonable objection to either mode of proceeding. The latter at the first blush may appear the most equitable, but the two first are much more likely to insure a vigilant prosecution of the suit. And on further examination it may seem unjust that the creditor who has sustained all the risk and expense of bringing his suit to a successful termination, should in the end be obliged to divide the avails thereof with those who have slept upon their rights, or who have intentionally kept back that they might profit by his exertions, when there could no longer be any risk in becoming parties to the suit.

The case of *McDermott and others* v. *Strong*, does not sanction the idea that a party obtains any specific lien upon

[*639]

the equitable estate of the debtor by the return of an execution unsatisfied. But by that act he puts himself in a situation to obtain a specific lien by the commencement of a suit here. In that case the complainant's executions had been returned unsatisfied, and their suit in this court had been pending several months before the debtor conveyed his property to the defendants, as his assignees under the insolvent act; and the complainants had also given notice to the original trustee that they intended to seek satisfaction out of the trust fund, by the aid of this court. Under these circumstances the Chancellor, very properly, decided that by their legal diligence the complainants had obtained a specific lien upon the fund which entitled them to a preference. But it is evident he did not consider the issuing of the executions as giving any priority; for the execution of one of the complainants was issued in May and the other in June, yet the decree in that case provided that if the fund was not sufficient to satisfy both judgments, it should be distributed among the complainants rateably, in proportion to the amount due to each. Where the property is not levied on by the execution, or where, from its nature, it could not be reached by an execution at law, the return of the execution unsatisfied does not give to the creditor any specific lien. He must follow up his execution by the commencement of a suit here, before he *can obtain any claim to a priority. The creditor whose legal diligence has pursued the property into this court is entitled to a preference as the reward of his vigilance. In *Edgell* v. *Haywood*, (3 Atk. Rep. 357,) Lord Hardwicke says, "The court does not proceed in this case on the ground of a specific lien, but only considers it a part of the property of the debtor which the creditor cannot come at without the aid of this court. If, therefore, after judgment, or even after the *fieri facias* had been issued, the debtor had assigned this *bona fide*, and for a valuable consideration, and without notice, it would be good, and prevail against this creditor. But after a bill brought and a *lis pendens* created

1829.

Edmeston
v.
Lyde.

[*640]

1829.

Edmeston
v.
Lyde.

as to this thing, such assignment could not prevail." So in the case of *Spader* v. *Davis*, (5 John. Ch. Rep. 280,) the holder of a fund under an assignment which was fraudulent in law, was held accountable only for so much thereof as remained in his hands at the time of the commencement of the suit in this court. If the creditor whose execution is first returned unsatisfied pursues the race of legal diligence, by the commencement of a suit here, he will obtain the reward of his vigilance; but if he abandons the pursuit, or lingers on the way, before he has obtained a specific lien, he has no right to complain if another creditor obtains a preference by superior vigilance. The other judgment creditors were not necessary parties and the complainants are entitled to a preference in payment out of the equitable assets which belonged to the defendants at the time of the commencement of this suit.

Neither was Buckner a necessary party. Where the property has been fraudulently assigned by the debtor, so that he has no legal or equitable rights as against the assignee, it will be necessary to make the assignee a party, to enable the court to reach the property in his hands. A decree against the fraudulent assignor would not in that case give any right to the property in the hands of the assignee. But where the debtor still retains the legal or equitable interest in the property, such interest may be conveyed to the complainant, or transferred to a receiver under the decree or order of this court; who can call upon the debtor or trustee of the defendant in the same manner as the defendant himself might have done previous to the filing of the bill. As *there is no allegation of fraud as to Buckner, if he was made a defendant he would be entitled to the advances which he has made, together with his costs. If all the right of the defendants is sold under a decree in this suit, the purchaser will be entitled to an assignment of the land from Buckner, on paying the amount due. And if he should unreasonably refuse to permit the purchaser to redeem, he might subject himself to the costs of a suit

[*641]

instituted for that purpose.  The debts, choses in action
and other equitable rights of the defendants may be as-
signed or sold, under the decree of this court, so as to vest
an equitable interest in the purchaser, which will be pro-
tected both here and at law.  The Court of Exchequer in
England has gone so far as to compel the purchaser of a
debt due to a bankrupt's estate to perform his contract spe-
cifically.  (*Wright* v. *Bell*, Daniels' R. 95.)  The principle
being established that every species of property belonging
to a debtor may be reached and applied to the satisfaction
of his debts, the powers of this court are perfectly adequate
to carry that principle into full effect.[1]  The only diffi-
culty is in deciding which of the various powers of the
court is best adapted to the end; which will be the most
convenient, and least expensive to the parties.  This must
in a great measure depend upon the nature of the property
to be reached.  I shall not therefore for the present, under-
take to lay down any general rules on the subject, except one
which is perfectly obvious.  If the property is of such a
nature that its fair value may be obtained by a sale at auc-
tion, in the usual manner, that course should be resorted
to as the most expeditious and least expensive.

The principal property in this case is an equitable right

1829.

Edmeston
v.
Lyde.

[1] 2 R. S. (4th ed.) 353, sec. 42, and revisor's note.  To entitle the judg-
ment creditor to the aid of Chancery to obtain satisfaction of his judgment
against the defendant, *out of property not liable to execution*, he must
show not only an execution issued but returned *nulla bona*.  *McElwan*
v. *Willis*, 9 Wen. 548; *Clarkson* v. *De Pyster*, 3 Paige, 320.  Therefore the
plaintiff should state in his bill the issuing of the execution, the time when
returnable, and the actual return of the sheriff thereon.  *Cassidy* v. *Meacham*,
d. 211.  His right to relief is recognized only after he has exhausted all
his legal remedies, without obtaining satisfaction.  *Child* v. *Brace*, 4 id. 310.
The judgment must be obtained in one of the courts of this state, or Chancery
will not aid the judgment creditor.  *Tarbell* v. *Griggs*, 3 Paige, 207.  Nor
does it lie at the suit of a county to enforce the payment of *county taxes*,
where the warrant for collection has been returned unsatisfied to the county
treasurer, for want of property whereon to levy.  *Durant* v. *Supervisors of
Albany Co.*, 26 Wen. 66.  All persons against whom the judgment was ren-
dered should be made parties to the bill.  *Child* v. *Brace*, 4 Wen. 309.

to certain real estate, subject to the payment of the advances made by Buckner thereon. If that is sufficient to satisfy the complainants' debt and costs, no further proceedings will be necessary as to the other property of the defendants.

There must for the present be a decree declaring the rights of the complainants, and providing for the sale of that property, reserving further directions.

The following decree was entered:

[*642] *" This cause having been brought on to be heard on bill and answer, and on hearing Mr. R. Sedgwick of counsel for the complainants and Mr. G. Griffin of counsel for the defendants, and the Chancellor having duly considered the same, it is this day adjudged and declared, and this court by virtue of the power therein vested doth adjudge and declare, that the complainants are entitled to the proceeds of all the choses in action, stocks, property, estate and effects of the defendants, either in law or equity, in possession, reversion or remainder, or held in trust for them or either of them, and which belonged to them or either of them, or in which they had any interest in law or equity at the time of the commencement of this suit; or to so much of the said proceeds as may be necessary to satisfy the amount due on their judgment against the defendants, in the pleadings in this cause mentioned, with the lawful interest thereon, and their costs in this suit to be taxed: It is therefore ordered and decreed that the defendants be enjoined from collecting, receiving, disposing of or intermeddling with any of the said choses in action, stocks, property, estate or effects, or to the proceeds thereof, except so far as is necessary to preserve the same from waste or loss, until the amount of the said judgment with the interest and costs aforesaid is fully satisfied, or until the further order of this court. And it is further ordered and decreed, that all the right and interest of the said defendants, either in law or equity, to the lots or parcels of land, with the buildings therein mentioned or referred to in the receipt of William Goelet Buckner, mentioned and set forth in the defendants'

answer in the cause, together with all their right and claim against the said Buckner, for or on account of the said lots, or of the said receipt, be sold at public vendue by or under the direction of one of the masters of this court, at the Merchants' Exchange in the city of New York, the said master giving three weeks' public notice of the time and place of such sale in one of the public newspapers in the city of New York, at least once in each week; and that previous to the said sale, the said master ascertain as near as may be the amount advanced by the said Buckner to the defendants on account of the said receipt; and that he have \*liberty to examine the defendants, or any witnesses on oath for that purpose, if he shall deem it necessary; that the sale be made at the risk of the purchaser, for cash, and that the complainants be at liberty to become purchasers on such sale; that the master execute a conveyance or assignment to the purchaser in such form as the master may think proper, and that the defendants, if required by the purchaser, join in the said conveyance or assignment as the master may direct; and that they be required to stipulate therein that the purchaser be at liberty to use their names, if he shall deem it necessary, in any suits or proceedings in relation to the subject matter of the said sale, he giving to them such indemnity against the costs of any such suit or proceedings as may be directed by this court previous to the commencement of any such suit or proceeding. And that the master pay to the complainants or their solicitor out of the proceeds of the said sale their costs of this suit to be taxed, and also the amount of their said judgment with lawful interest thereon, or so much as the purchase-money will pay of the same, and that the master take a receipt for the amount so paid and file the same with his report; and that he bring the surplus moneys arising from the said sale, if any there be, into court without delay, to abide the further order of the court. And it is further ordered, that if the moneys arising from the said sale are not sufficient to pay the amount due on the said judgment,

1829.

———

Edmeston
v.
Lyde.

·

[\*643]

CASES IN CHANCERY.

with interest and costs as aforesaid, the said master ascertain the amount of such deficiency, and specify the same in his report; and that on the coming in and confirmation of the said report, the complainants may apply to this court for such further directions as may be necessary or proper in relation to such deficiency. And in the meantime either party is to be at liberty to apply to this court from time to time as they may be advised in relation to the said property or effects of the defendants, or the preservation or disposition thereof, or the collection of the debts."