Wales *v.* Lawrence.

EDMUND L. B. WALES AND THE FARMERS BANK OF HARRISBURGH.

*v.*

JOHN B. LAWRENCE et al.

A creditor recovered a judgment against thirteen joint and several debtors, and issued an execution against them all, under which levies were made, ample to satisfy the judgment debt; twelve-thirteenths of the whole amount of the judgment had been paid by twelve of the defendants, each one paying one-thirteenth—*Held*, that, since the creditor could make the whole debt out of the property under levy, this court had no jurisdiction to entertain a bill filed by the creditor to set aside fraudulent conveyances made by the thirteenth debtor, (the defendant), in order to defeat the complainant's attempt to satisfy the remaining unpaid one-thirteenth of the judgment out of the defendant's property.

On final hearing on bill, answer and proofs.

*Mr. David J. Pancoast,* for complainants.

*Mr. Herbert A. Drake* and *Mr. Abraham Browning,* for defendants.

VAN FLEET, V. C.

The question mainly contested in this cause is, whether, upon the admitted facts, the complainants have any standing in equity. They are judgment creditors. The complainant Wales recovered a judgment at law against the defendant Lawrence and thirteen other persons, on the 17th of May, 1877, for over $30,000. His judgment is founded on a joint and several bond made by all the defendants. The corporate complainants, The Farmers Bank of Harrisburg, have also recovered a judgment at law against Lawrence and seven other persons. Their judgment is founded on a promissory note made by Lawrence and the seven other defendants. Executions, both original and *alias,* have been issued upon both judgments and levies made upon property sufficient to satisfy both. Thirteen of the defendants in the first judgment have paid thirteen-fourteenths of the amount necessary to satisfy it, and seven of those liable for the second judgment have paid seven-eighths of the sum due upon that. Lawrence has paid nothing. Lawrence, some time after the execution of the bond to the complainant Wales, and shortly before the making of the note to the corporate complainants, conveyed all his real estate to two of his brothers. He had previously, but subsequent to the execution of the Wales bond, executed a mortgage to one of his brothers. The property thus disposed of embraced nearly everything he possessed. He was insolvent at the time these conveyances were made. The two deeds and the mortgage are charged to have been executed for the purpose of defrauding his creditors. The evidence produced in support of the truth of this charge is very persuasive.

The defendants in the judgments at law stand to each other in the relation of co-obligors and joint promissors. The thirteen in the one case, and the seven in the other, are not sureties of Lawrence, but simply jointly liable with him. A mere in-

Wales *v.* Lawrence.

spection of the levies will show that the property seized under the executions is abundantly sufficient, not only to satisfy the sums still remaining due, but to pay the sums for which the judgments were recovered. No legal obstacle stands in the way of the complainants collecting every penny they are entitled to, by the use of their legal remedy. In this condition of affairs, have the complainants any right to the aid of this court?

It is a well-established rule of equity jurisprudence that a judgment creditor is not entitled to the aid of a court of equity for the enforcement of his judgment, until he has exhausted his remedy at law. This is an indispensable preliminary, which he must show affirmatively, to entitle himself to a footing in equity. Said Chancellor Green, in *Robert* v. *Hodges, 1 C. E. Gr. 299:* " Equity will not, of course, grant its aid to enforce legal process. It must first appear that the legal remedy of the complainant is exhausted." The same principle was declared in *Swayze* v. *Swayze, 1 Stock. 273 ; Randolph* v. *Daly, 1 C. E. Gr. 313,* and *Bigelow Blue Stone Co.* v. *Magee, 12 C. E. Gr. 392.* And to the same effect are the adjudications in *Clarkson* v. *De Peyster, 3 Paige 320 ; Cuyler* v. *Moreland, 6 Paige 273 ; Reed* v. *Wheaton, 7 Paige 663 ; Merchants and Mechanics Bank* v. *Griffith, 10 Paige 519.*

The judgment of the court of errors and appeals in *Dunham* v. *Cox, 2 Stock. 437,* is so apposite to the case in hand that I think I am bound to regard it as a conclusive authority on the question now before the court. The complainant in that case was a judgment creditor. By his bill he alleged that his judgment debtor had conveyed away, by voluntary deeds, a large part of his real estate for the purpose of defrauding creditors, but he also showed that under the execution which had been issued to enforce his judgment, a levy had been made upon other property belonging to his debtor, and though the value of the property so levied upon was not stated in the bill, its quantity and character made it entirely clear to the court that its value exceeded the amount due to the complainant on his judgment. Chancellor Williamson, in delivering the judgment of the court, said :

14

" It is not enough for the bill to show that the debtor has made a fraudulent disposition of any particular portion of his property, to entitle the creditor to the aid of a court of equity. He must show that such disposition embarrasses him in obtaining satisfaction of his debt; for, if the debtor has other property, subject to the judgment and execution, sufficient to satisfy the debt, there is no necessity for the creditor to resort to equity. If his debt can be satisfied out of property upon which his judgment is a lien, it is only inviting useless litigation for him to question conveyances made by the debtor, which, however they may have been intended, do not operate as a fraud upon him. A court of equity interferes because its aid is necessary to assist the creditor in obtaining his legal rights. If there is property which the law places within his reach, free from embarrassment, to satisfy his debt, the aid of a court of equity is not required."

The only distinction which it is possible to draw between the case just cited and the one under consideration, is this: In *Dunham* v. *Cox* the complainant had but a single debtor to look to for his debt, while here there are several, but this, while it may increase the complainants' chances that their legal remedy will be effectual, will not permit them to seek relief in equity so long as they have the power to get their money by the ordinary legal means. They are restricted to their remedy at law until that means of getting their money has been exhausted. And what is their remedy at law? To enforce the payment of their judgment by legal process. If they can get their money by that means, they do not need the help of equity, and equity can only aid them, in such cases, because its aid is necessary. The complainants cannot issue an execution against one, or less than the whole number against whom they have judgment. The law will not allow them to split up their remedy, by issuing an execution, first against one defendant, and then against another; they have no such remedy at law, but they must proceed against all, and until they have exhausted, against all, the means which the law provides, they are not in condition to require the aid of

a court of equity against any one of the defendants, and cannot have it.

The defendant has, I have no doubt, attempted to commit a fraud against his creditors, but the complainants have no right to complain of it. His fraud has done them no harm. They can get their money of the persons who are legally liable for it, without the least difficulty, by simply using the means which the law has provided. So long as this is so, they will neither need, nor have they a right to ask, the aid of a court of equity.

The complainants' bill must be dismissed.